# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:11-cv-00196-MR

| | |
|---|---|
| DAVID A. LUSK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 9] and the Defendant's Motion for Summary Judgment [Doc. 11].

## I.  PROCEDURAL HISTORY

The Plaintiff David A. Lusk filed a protective application for a period of disability and disability insurance benefits on May 9, 2009, alleging that he had become disabled as of June 1, 2006, due to a back impairment, pain in his hips and legs, knee and ankle pain, obesity, depression, anxiety, low testosterone, arthritis, and chronic constipation. [Transcript ("T.") 97-110, 118, 131]. The Plaintiff's application was denied initially and on reconsideration. [T. 46-51]. Upon the Plaintiff's request for a rehearing, a

hearing was held before an Administrative Law Judge ("ALJ") on September 15, 2010. [T. 27-45]. On September 30, 2010, the ALJ issued a decision denying the Plaintiff benefits. [T. 8-22]. The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 2-7]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the Commissioner of any Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be

2

established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below.  Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III.  THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process.  20 C.F.R. §§ 404.1520, 416.920.  If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant.  20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment.  If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no

3

severe impairment is shown and the claimant is not disabled.  Id.  Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience.  Id.  Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past.  If the claimant can still perform that work, then a finding of not disabled is mandated.  Id.  Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work.  If so, then the claimant is not disabled.  Id.  In this case, the ALJ's determination was made at the fifth step.

## IV.  THE ALJ'S DECISION

On September 30, 2010, the ALJ issued a decision denying the Plaintiff's claim.  [T. 8-22].  Proceeding to the sequential evaluation, the ALJ found that the Plaintiff's date last insured was June 30, 2006 and that he had not engaged in substantial gainful activity since his alleged onset date of June 1, 2006.  [T. 13].  The ALJ then found that the medical evidence established the following severe impairments: disorders of the

4

back (discogenic and degenerative), fractures of the lower limb, and an affective mood disorder. [Id.]. The ALJ determined that none of Plaintiff's impairments met or equaled a listing. [T. 13-14].

The ALJ then assessed the Plaintiff's residual functional capacity (RFC), finding that the Plaintiff had the ability to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b). Specifically, the ALJ found that due to back and leg pain with radiculopathy, the Plaintiff had to be able to make postural changes occasionally and to change positions from sitting to standing as necessary; that due to the side effects of his medication, he must avoid working around dangerous machinery or unprotected heights; and that due to pain and depression, he would be limited to simple, repetitive, routine work. [T. 15-20]. He then determined that the Plaintiff was unable to perform his past relevant work as an owner of a tree service. [T. 20]. Considering the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform. [T. 21]. He therefore concluded that the Plaintiff therefore was not "disabled" as defined by the Social Security Act from June 1, 2006, the alleged date of onset, through the date last insured, June 30, 2006. [T. 22].

## V. DISCUSSION[1]

The Plaintiff asserts the following assignments of error: (1) that the ALJ failed to consider the Medical Source Statement offered by the Plaintiff's treating physician, Dr. Mitchell; (2) that the ALJ failed to conduct a function-by-function analysis, by required by SSR 96-8p; (3) that the ALJ's hypothetical question failed to inform the vocational expert (VE) of the frequency with which the Plaintiff has to alternate sitting and standing; (4) that the ALJ failed to include in the hypothetical question to the VE the Plaintiff's significant limitation in his ability to bend; (5) that the ALJ erred in relying on VE Testimony that was in "unexplained conflict" with the Dictionary of Occupational Titles (DOT); (6) that the ALJ's credibility determination was not based on substantial evidence as it contained a "patent self-contradiction"; (7) that the ALJ failed to give controlling weight to Dr. Mitchell's opinion; and (8) that the ALJ failed to apply the "great weight rule" to the Plaintiff's allegations of pain. [Doc. 10].

### A. Dr. Mitchell's Opinions

The Plaintiff first argues that the ALJ failed to "mention or even cite" in his written decision the favorable Medical Source Statement offered by Dr. Mitchell, the Plaintiff's treating physician. [Doc. 10 at 8]. He further

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

contends that the ALJ erred in failing to give Dr. Mitchell's opinion controlling weight. [Doc. 10 at 14-17]. Both of the Plaintiff's arguments, however, are without merit.

Contrary to the Plaintiff's first argument, the ALJ did in fact note and discuss the opinions provided by Dr. Mitchell in the Medical Source Statement. Specifically, the ALJ noted that "Dr. Mitchell completed a medical source statement of the claimant's ability to do mental work related activities" and he considered these opinions when determining whether the Plaintiff has any mental impairments limiting his ability to understand, remember, and carry out instructions. [T. 19]. The ALJ also considered Dr. Mitchell's opinion that physically, Plaintiff could occasionally lift or carry up to twenty pounds, and sit, stand, or walk for forty-five minutes at a time, for a total of two hours each over the course of an eight-hour workday. [T. 271-72]. The ALJ did not afford this opinion controlling weight, however, as he determined that it was "too restrictive for the claimant's alleged impairments for the adjudicated period." [T. 19]. In discounting Dr. Mitchell's opinion, the ALJ also noted that Dr. Mitchell had relied "quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." [T. 19-20].

The ALJ properly discounted Dr. Mitchell's opinion. An ALJ may discount a treating physician's opinion if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques. SSR 96-2p, 1996 WL 374188, at *1; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Here, as support for his opinion that Plaintiff could only lift or carry up to twenty pounds occasionally, Dr. Mitchell noted that the Plaintiff claimed he was unable to lift or carry his twenty-nine pound son, partake in recreational activities such as fishing, gardening or playing with his children, or perform household chores. [T. 271]. As support for his finding regarding the Plaintiff's sitting and standing limitations, Dr. Mitchell noted that the Plaintiff alleged that he could only tolerate sitting or standing for thirty to forty-five minutes without unbearable pain. [T. 271-76]. Because Dr. Mitchell's opinion was based entirely upon the Plaintiff's subjective complaints and symptoms and did not cite any objective support or clinical findings, the ALJ did not err in discounting this opinion.

Further, as the ALJ correctly noted, Dr. Mitchell's opinion was too restrictive when compared with the evidentiary record as a whole. [T. 19]. An ALJ may discount a treating physician's opinion if it is inconsistent with substantial evidence in the record. Mastro, 270 F.3d at 178. In the present case, Dr. Mitchell assessed limitations far beyond those found by the state

8

agency physicians [Tr. 492-505, 506-13, 514-15]. Accordingly, the ALJ did not err in his weighing of Dr. Mitchell's opinions.

B. **Function-by-Function Assessment**

Next, the Plaintiff argues that the ALJ erred in failing to perform a function-by-function assessment, as required by SSR 96-8p, before expressing his RFC finding in exertional terms. [Doc. 10 at 8-9].

In making an RFC assessment, the ALJ is required to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis...." SSR 96–8p, 1996 WL 374184, at *1. An ALJ's failure to articulate the required function-by-function analysis can be harmless error, however, where the ALJ's "ultimate finding is supported by substantial evidence in the record." Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000). In the present case, the ALJ's finding that Plaintiff is capable of performing a limited range of light work is supported by the findings of the state agency physician, who found that the Plaintiff remained capable of performing not only light work, but medium work as well. [T. 506-13]. Such an opinion from an "acceptable medical source" constitutes substantial evidence to support the ALJ's RFC assessment. See 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2). This assignment of error, then, is without merit.

9

## C. The VE's Testimony

Plaintiff next argues that the ALJ's hypothetical question to the VE was flawed, as it failed to specify the frequency with which the Plaintiff could alternate between sitting and standing [Doc. 10 at 9-10).

In his hypothetical question to the vocational expert, the ALJ included a sit/stand option. [T. 43-44]. "A residual functional capacity that states a claimant requires the option to sit or stand 'clearly contemplates' that the claimant requires the option to sit or stand at will during the work day." Barnes v. Astrue, No. 1:09CV553, 2011 WL 6371005, at *4 (M.D.N.C. Dec. 20, 2011) (citation omitted). Here, the fact that the ALJ included a sit/stand option in his hypothetical question to the VE presumes the fact that the individual would be able to sit or stand at will. See id. The ALJ's failure to include the specific frequency of the need to sit/stand, therefore, is not reversible error.

The Plaintiff also argues that the VE's testimony – namely, that an individual with the Plaintiff's RFC, which includes a sit/stand option, could perform other work in the national economy -- conflicts with the DOT. [Doc. 10 at 10-11]. In support of this argument, the Plaintiff cites to Manes v. Astrue, 267 F. App'x 586 (9th Cir. 2008), for the proposition that there is a rebuttal presumption that unskilled jobs involving a sit/stand option do not

10

exist in significant numbers in the national economy. The Manes decision, however, is entirely distinguishable from the present case. In Manes, the vocational expert found that the claimant could perform the job of parking lot attendant (classified by the DOT as light), despite the fact that he had an RFC for sedentary work with a sit/stand option. Id. at 588. Thus, there was an *obvious* conflict between the vocational expert's testimony and the DOT's classification of the parking lot attendant position. In the instant case, however, the DOT identifies the positions of electrical equipment inspector, garment sorter, and silverware wrapper at the light exertional level, as did the VE. Accordingly, there is no conflict between the DOT and the VE's testimony.

To the extent that the Plaintiff is arguing that the VE's testimony is in conflict with the DOT because the latter does not address whether the identified jobs allow for a sit/stand option, such argument must also fail. Contrary to Plaintiff's argument, no conflict existed between the VE's testimony and the DOT. The DOT is silent as to the availability of a sit/stand option for these particular positions; as such, it was entirely proper for the ALJ to obtain and consider VE testimony in order to supplement the DOT job descriptions. See Hynes v. Barnhart, No. Civ. 04CV490SM, 2005 WL 1458747, at *5 (D.N.H. Jun. 15, 2005). Since the VE had an on-going

11

knowledge of local vocational practices, he was qualified to determine which jobs an individual with the Plaintiff's RFC could perform, and the ALJ properly relied on his testimony in finding that the Plaintiff could perform other work that existed in significant numbers in the national economy. See Moffett v. Apfel, No. Civ. A. 99–0915–P–S, 2000 WL 1367991, at *8 (S.D. Ala. Sep. 1, 2000).

The Plaintiff further argues that the ALJ's hypothetical to the VE was flawed because it failed to account for the Plaintiff's inability to bend. [Doc 10 at 10]. The Court finds no error in this regard. An ALJ is required to incorporate into his RFC and hypothetical question only those limitations which he finds credible and supported by the evidence. See Schmidt v. Astrue, 496 F.3d 833, 846 (7th Cir. 2007). Here, substantial evidence supports a finding that the Plaintiff was not limited with respect to his ability to bend. The Plaintiff's musculoskeletal examinations showed satisfactory range of motion [T. 237, 259], and he had only "minimal restrictions" with respect to his trunk rotation [T. 179]. Even assuming, however, that the ALJ should have included a limitation on bending in the hypothetical to the VE, any such error was harmless. The jobs identified by the VE – silverware wrapper (DOT No. 318.687-018), garment sorter (DOT No. 222.687-014), and electrical inspector (DOT No. 724.685-014) -- do not

require the ability to bend or stoop. As the Plaintiff could perform these jobs even in the presence of a bending/stooping limitation, the Court finds no reversible error in the ALJ's hypothetical.

For these reasons, the Plaintiff's assignments of error pertaining to the hypothetical posed to the VE and the VE's subsequently testimony are found to be without merit.

### D. The Credibility Assessment

In his next assignment of error, the Plaintiff argues that the ALJ erred in evaluating his subjective complaints and statements. [Doc. 10 at 11-14].

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) ... which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996) (citations omitted). If there is such evidence, then the ALJ must then evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595; see 20 C.F.R. § 416.929(c)(3).

At the first step of the Craig analysis, the ALJ determined that the Plaintiff's medically determinable impairments could reasonably be

13

expected to cause his alleged symptoms. [T. 16]. At step two of the credibility analysis, the ALJ found that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the Plaintiff's RFC as assessed by the ALJ. [Id.]. The Plaintiff argues that by making a positive finding at step one that the Plaintiff has a medical condition which could reasonably be expected to produce *the pain alleged*, the ALJ necessarily contradicted himself in finding at step two that the Plaintiff's allegations of pain "have no basis in the objective evidence." [Doc. 10 at 13].[2]

Contrary to the Plaintiff's argument, however, the ALJ did not find that the Plaintiff's subjective complaints lacked *any* objective basis. Instead, as discussed above, the ALJ determined that Plaintiff possessed a medically determinable impairment, but that his symptoms and statements were not

---

[2] In so arguing, the Plaintiff contends that in discounting Dr. Mitchell's treating opinion, the ALJ made an implicit finding that there was no objective basis to support the Plaintiff's subjective complaints, a finding which the Plaintiff argues is inconsistent with the ALJ's finding at step one of the credibility analysis. [Doc. 10 at 13-14]. The Plaintiff, however, confuses the issue. An ALJ's analysis of a treating source opinion is not determinative of his assessment of the claimant's credibility. At step one of the credibility assessment, the ALJ relied upon objective evidence in the record, including the Plaintiff's positive MRI results and x-ray examinations, to find that the Plaintiff possessed medically determinable impairments, i.e., back disorder and fractured lower limb, which could reasonably cause his alleged pain. [T. 13, 173-84]. The fact that the ALJ discounted Dr. Mitchell's Medical Source Statement regarding the *extent* of Plaintiff's functional limitations has no bearing upon the ALJ's determination of the existence of a medically determinable impairment at step one of the credibility analysis.

14

entirely credible to the extent and degree alleged. There is substantial evidence in the record to support this determination.

At step two of the credibility determination, an ALJ may consider (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) a claimant's medical history and laboratory findings; (3) objective medical evidence; (4) and any other evidence relevant to the severity of the impairment. SSR 96-7p, 1996 WL 374186, at *1; 20 C.F.R. § 416.929. Such other relevant evidence may include a claimant's activities of daily living; the location, duration, frequency and intensity of his pain or symptoms; precipitating or aggravating factors; the type, dosage, effectiveness and side effects of any medications; and any other measures used to relieve pain. 20 C.F.R. § 416.929(c)(3). In the present case, the ALJ began his credibility analysis by summarizing the Plaintiff's statements and testimony regarding his complaints and symptoms. [T. 16]. The ALJ went on to consider the extent and duration of the Plaintiff's allegations of pain. [T. 16-20]. Specifically, the ALJ noted that the Plaintiff had experienced knee pain since 1986, after sustaining a self-inflicted gunshot wound. [T. 173]. The ALJ also noted that Plaintiff injured his back at work in 1987, and had suffered from back pain ever since. [T. 118]. Despite the Plaintiff's on-the-job back injury, he was able

to return to work after only a few months. [T. 16]. It was entirely proper for the ALJ to consider the Plaintiff's previous ability to work despite pain in assessing the credibility of his subjective complaints and symptoms.

The ALJ also considered the consistency of the Plaintiff's complaints with the evidentiary record as a whole. [T. 16-20]. Specifically, the ALJ noted that in February 2006, x-rays of Plaintiff's lumbar spine demonstrated only mild anterior spondylosis; mild disc narrowing at L3-L4; moderate disc narrowing at L4-L5; and mild to moderate facet arthropathy at L5-S1. [T. 211]. A June 2006 MRI of the Plaintiff's back revealed mild to moderate disc space loss; and mild to moderate subarticular neural formainal encroachment at L3-L4 and L4-L5. Plaintiff's conus appeared unremarkable and his vertebral bodies were intact. [T. 266]. The ALJ appropriately considered the assessment of Plaintiff's condition as only mild to moderate in assessing the credibility of his disabling complaints.

In addition, the ALJ noted Plaintiff's responsiveness to treatment and surgery. Following the Plaintiff's microlumbar discectomy [T. 179], an MRI of his lumbar spine revealed no significant abnormality with respect to his alignment, vertebrae, visualized spinal cord, or at L1-L2. At L2-L3 there was only mild signal loss consistent with disc dehydration without any significant bulge or protrusion. There was a small area of scar tissue at L3-

16

L4 and only mild joint hypertrophy at L3-L4. At L4-L5, there was also some scarring, which may have been consistent with post-operative change. [T. 234].

The ALJ also discussed and weighed the alleged side effects of Plaintiff's medications. [T. 16]. Specifically, the ALJ noted that Plaintiff claimed to experience dizziness when taking his medication and that he was afraid to drive. [Id.]. The ALJ considered the consistency of such statements with the Plaintiff's activities of daily living. [T. 16-18]. On June 13, 2006, the Plaintiff reported to his physician that he had been doing fairly well until he had slipped in the river while fishing. [T. 373]. The Plaintiff's wife also reported that he was capable of driving short distances; caring for his personal needs to include shaving, feeding himself, and using the toilet without assistance; preparing simple meals and snacks; and shopping in stores approximately once a month for food and personal items. [T. 143-50]. In light of this evidence, there is substantial support in the record for the ALJ's credibility determination.

The Plaintiff nevertheless argues that his subjective complaints are entitled to "great weight" at the second step of the credibility assessment because there is objective evidence in the record to support a positive finding at step one of the Craig. In support of this argument, the Plaintiff

17

cites to the Fourth Circuit's recent holdings in Smith v. Astrue, 457 F. App'x 326 (4th Cir. 2011), and Felton-Miller v. Astrue, 459 F. App'x 226 (4th Cir. 2011). [Doc. 10 at 19]. Plaintiff's argument, however, is misplaced. The Fourth Circuit has affirmatively rejected the idea that Craig creates any kind of "great weight" rule. See Smith, 457 F. App'x at 329 ("Craig does not create or recognize a great weight rule affording the claimant a presumption of credibility at step two of the pain analysis based on a successful showing at step one."); accord Felton-Miller, 459 F. App'x at 229 n.1. In short, there is simply no legal support for Plaintiff's argument that the ALJ erred in failing to afford great weight to his subjective complaints when assessing his credibility.

In sum, the ALJ considered the appropriate factors in assessing the credibility of Plaintiff's subjective complaints, and there is substantial evidence in the record to support the ALJ's credibility determination. The Plaintiff's final assignments of error, then, are without merit.

## VI. CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards, and that there is substantial evidence to support the ALJ's finding of no disability from the date of onset through the date late insured.

# O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 9] is **DENIED**; the Defendant's Motion for Summary Judgment [Doc. 11] is **GRANTED**; and the Commissioner's decision is hereby **AFFIRMED**. This case is hereby **DISMISSED WITH PREJUDICE.**

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: February 11, 2013

Martin Reidinger
United States District Judge